# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:15-cv-00273-RJC

| | |
|---|---|
| LINDA GREEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) **ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 8), and Memorandum in Support, (Doc. No. 9), and Defendant's Motion for Summary Judgment, (Doc. No. 11), and Memorandum in Support, (Doc. No. 12).

## I.     BACKGROUND

### A.     Procedural Background

Plaintiff Linda Green ("Plaintiff") seeks judicial review of Carolyn W. Colvin's ("Defendant" or "Commissioner") denial of her social security claim. (Doc. No. 1). On October 5, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 et seq. (Doc. Nos. 7 to 7-9: Administrative Record ("Tr.") at 48, 121–25). Plaintiff alleged an inability to work due to disabling conditions beginning on April 2, 2012. (Id. at 123). The Commissioner denied Plaintiff's application initially on December 4, 2012, and again after reconsideration on February 22, 2013. (Id. at 48–67). Plaintiff filed a timely written request for a hearing. (Id. at 88).

On January 27, 2014, Plaintiff, represented by counsel, participated in and testified at a video hearing before an Administrative Law Judge ("ALJ"). (Id. at 34–47). The ALJ issued a decision on March 18, 2014, denying Plaintiff's claims. (Id. at 14–33). Plaintiff filed a request for review of the ALJ's decision on or about April 24, 2014, which was denied by the Appeals Council on October 9, 2015. (Id. at 13, 1–7). Therefore, the March 18, 2014 ALJ decision became the final decision of the Commissioner.

Plaintiff's Complaint seeking judicial review and a remand of her case was filed in this Court on December 8, 2015. (Doc. No. 1). Plaintiff's Motion for Summary Judgment, (Doc. No. 8), and Plaintiff's Memorandum in Support, (Doc. No. 9), were filed May 9, 2016; and Defendant's Motion for Summary Judgment, (Doc. No. 11), and Defendant's Memorandum in Support, (Doc. No. 12), were filed August 8, 2016. Plaintiff did not file a response to Defendant's Motion for Summary Judgment and the time for doing so has passed. The pending motions are ripe for adjudication.

B.    Factual Background

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between April 2, 2012, and the date of his decision on March 18, 2014.[1]  (Tr. at 16).  To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not

---

[1]    Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

under a disability at any time from April 2, 2012, through the date of his decision, March 18, 2014. (Tr. at 14–33).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. at 22–29).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since April 2, 2012, the alleged disability onset date. (Id. at 19). At the second step, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease, obesity, and an affective disorder." (Id.). At the third step, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that meets or medically

equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1." (Id. at 21–22).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform "light" work. (Id. at 22–27). Specifically, the ALJ found that Plaintiff retained the RFC to perform as follows:

> light work as defined in 20 CFR 404.1567(b) except she can perform only occasional postural activities and is precluded from climbing ladders, ropes or scaffolds. She should avoid concentrated exposure to extreme cold and hazards and is limited to simple, unskilled work.

(Id. at 22).[2] In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Id.). The ALJ further opined that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Id.).

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work. (Id. at 25). At the fifth and final step, the ALJ concluded, based on the testimony of a vocational expert and "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [that] there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Id.). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, from April 2, 2012 through the date of his decision. (Id. at 29).

---

[2]   Light work is defined as lifting or carrying up to ten pounds frequently and up to twenty pounds occasionally. 20 C.F.R. 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the

record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

III.   **DISCUSSION**

On appeal to this Court, Plaintiff argues that the ALJ erred as a matter of law in denying her claims on two grounds: (1) whether the ALJ properly evaluated Plaintiff's credibility regarding limitations from pain and performed a proper function-by-function evaluation when assessing the RFC; and (2) whether the ALJ adequately explained his decision to give only little weight to the opinions of Plaintiff's treating medical providers. (Doc. No. 9 at 4). The Court agrees with Defendant that these issues presented are more appropriately broken into three issues—Plaintiff's credibility, RFC analysis, and treatment of opinions of Plaintiff's treating medical providers—and will analyze them accordingly.

   A.   <u>Whether the ALJ's Properly Evaluated Plaintiff's Credibility Regarding Limitations from Pain</u>

Plaintiff argues that the ALJ did not properly evaluate Plaintiff's credibility regarding her alleged limitations due to pain because the credibility evaluation lacked analysis and specific citations to the record notwithstanding a "rote recitation of some of the medical evidence from the file earlier in his decision." (Doc. No. 9 at 4–6). The Court finds that the ALJ's determination that the Plaintiff's allegations of pain and other limiting symptoms were not completely credible was supported by substantial evidence, as explained by the ALJ.

The ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. Hays, 907 F.2d at 1456. Consequently, the ALJ is accorded deference with respect to determinations of a claimant's credibility. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Indeed, "[b]ecause he had the opportunity to observe the demeanor and to determine

the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Id.

The ALJ must follow a two-step process to determine a claimant's credibility and whether she is disabled by pain or other symptoms. First, the regulations require "at the threshold a showing by objective evidence of the existence of a medical impairment 'which could reasonably be expected to produce' the actual pain, in the amount and degree, alleged by the claimant." Id. at 594 (quoting 20 C.F.R. §§ 416.929(b), 404.1529(b)). If the claimant meets this threshold, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595. This evaluation must take into account:

> not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain . . . ; and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (citing 20 C.F.R. §§ 416.929(c), 404.1529(c)).

The Social Security Administration has drafted template language for inclusion in ALJ decisions. See Mascio v. Colvin, 780 F.3d 631, 638 n.9 (4th Cir. 2015). The Fourth Circuit criticized this boilerplate language in Mascio, finding that the language "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" Id. at 639 (quoting Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012)). An ALJ's use of the boilerplate language, nonetheless, does not require a remand when the ALJ properly analyzes the claimant's credibility elsewhere. Id. at 639–40 (holding that use of this language constitutes harmless error if the ALJ "properly analyzed credibility elsewhere"); accord Jones v. Colvin, No. 6:13-CV-00059, 2015 WL 1477892, at *10 (W.D. Va. Mar. 30, 2015)

("The ALJ's use of standard language in his analysis of [the claimant's] credibility does not render invalid his otherwise valid analysis because the ALJ provided adequate reasoning for his decision.").

Here, after finding that Plaintiff met the first prong of the test, the ALJ began his discussion of Plaintiff's credibility by using the boilerplate language. (Tr. at 26). The ALJ then determined that Plaintiff's subjective complaints were not fully credible because they were not consistent with the evidence of record. (Id.). In evaluating Plaintiff's credibility, the ALJ considered the objective medical evidence, Plaintiff's medical and treatment history, her statements about her symptoms, her medications and their efficacy, and her daily activities. (Id.). Specifically, the ALJ noted that Plaintiff "is able to take care of her own personal needs," "assists in the care of animals," "prepares simple meals, performs some light housework and laundry duties," "drives a car, is able to go out alone and shop in stores, on the phone, and the computer," and "remains social active, talking to the family on the phone and go[ing] out to eat with her husband." (Id.). The ALJ also added that there is evidence of work activity. (Id.). Regarding mental impairments, the ALJ noted "mental status examinations were benign during mental health treatment visits, and the claimant was improved with the use of prescribed medication." (Id.).

Plaintiff contests the ALJ's analysis on multiple fronts. First, Plaintiff essentially argues that the information on which the ALJ relied regarding daily activities did not present the whole picture and was not substantial evidence. (Doc. No. 9 at 4). For example, the ALJ stated Plaintiff assists in the care of animals. (Tr. at 26). Plaintiff counters that she lets the dog out to go to the bathroom but must get help with feeding, watering, grooming, and bathing the pets. (Doc. No. 9 at 4; Tr. at 148). In another example, Plaintiff notes the ALJ's finding that Plaintiff

performed light housework, but points out that Plaintiff could not do yard work or use a push mower. (Doc. No. 9 at 4; Tr. at 150). Plaintiff next contends that the ALJ's consideration of medical evidence as it related to Plaintiff's credibility contained no citations to specific pieces of evidence in the record. (Doc. No. 9 at 5). Plaintiff admits that the ALJ did discuss some medical evidence earlier in the decision, but argues that the lack of analysis regarding how this evidence affects Plaintiff's credibility fell short of the ALJ's obligation. (Id.). Plaintiff further argues that the ALJ's reliance on activities of daily living ("ADLs") and an Urgent Care note was improper. Specifically, Plaintiff asserts that the Urgent Care note related to an acute condition only and that Plaintiff's ability to do basic personal and household tasks do not provide support for the ALJ's adverse credibility finding. (Doc. No. 9 at 6–7).

Taking into consideration Plaintiff's arguments, the Court finds that the ALJ engaged in a well-reasoned credibility evaluation that renders any error due to the boilerplate language harmless. Unlike in Mascio, in which the ALJ did not "explain how he decided which of Mascio's statements to believe and which to discredit," 780 F.3d at 640; here, the ALJ stated that he did not find "completely credible" the Plaintiff's "allegations of pain and other limiting symptoms, including mental symptoms, which she asserts prevent her from performing any substantial gainful activity." (Tr. at 26). The ALJ also stated that Plaintiff's testimony at the hearing about her limitations is not supported by the evidence. (Id.).

Many of Plaintiff's arguments essentially ask the Court to re-examine and reweigh the evidence—that is not the Court's task. See Hays, 907 F.2d at 1456. Specifically, Plaintiff's arguments regarding her daily activities and the Urgent Care note suggest that the Court should evaluate the evidence differently than the ALJ to whom the evidence was presented. Even excluding the Urgent Care note based on Plaintiff's representations of the note, which the ALJ

only stated was a "reference to work activity" and still would have some value in that Urgent Care told Plaintiff she could go back to work regardless of whether she was actually working, the ALJ relied on substantial evidence in determining that he did not find "completely credible" Plaintiff's testimony and statements about pain and mental impairments and their effect on her ability to work. That evidence included the ADLs and medical records and treatment notes as discussed further below.

Plaintiff's third argument on this front—that the ALJ did not adequately analyze why the medical evidence detracted from Plaintiff's credibility—also lacks merit. The ALJ included more than a "rote recitation of some of the medical evidence." The ALJ dedicated three full pages to discussing primarily Plaintiff's medical evidence regarding her physical and mental impairments. (Tr. at 20, 23–25). The ALJ's detailed discussion ranged from Plaintiff's symptoms to her treatments to the diagnoses and conclusions of her doctors. (Id.). This detailed discussion makes clear the logic behind the ALJ's ultimate conclusion that the medical evidence undermines Plaintiff's statements regarding the extent of her pain and limitations. (Id. at 26). For example, the ALJ provided detailed discussions about why he discredited some of Plaintiff's disorders she alleged during the January 27, 2014 hearing, specifically, a hiatal hernia, acid reflux, and headaches. (Id. at 20). Regarding the hiatal hernia and acid reflux, the ALJ noted in detail Plaintiff's presentation symptoms to and treatment by her primary care physician, but after initial complaints observed "no further reference to ongoing issues or subsequent treatment" and "no reference to a hernia or gastrointestinal issues" in a January 24, 2012 assessment of functional abilities that her primary care provider completed. (Id.). The ALJ also noted that Plaintiff complained of headaches, perhaps due to stress, but concluded that it was not a severe impairment because Plaintiff did not present the issue to her healthcare providers and there were

no clinically assessed signs or symptoms attributable to the alleged headaches. (Id.).

Furthermore, the extensive medical evidence cited by the ALJ provides substantial evidence on which his credibility conclusion rests. The ALJ provided a detailed account of the medical history related to Plaintiff's symptoms associated with degenerative disc disease. (Id. at 23–25). Among recitation of numerous pieces of objective medical evidence, the ALJ noted doctors' observations that Plaintiff was doing well in her recovery from a lumbar laminectomy and that no back pain was mentioned during treatment for routine medical issues. (Id. at 24). Specifically, the ALJ noted the following treatment notes from Plaintiff's doctors:

- Plaintiff denied any numbness or weakness in lower extremities two weeks after surgery, (Id. at 23, 288);

- Normal strength and sensation in all motor groups and dermatomes of the bilateral lower extremities two weeks after surgery, (Id.);

- Continued symptomatic improvement through June 2012, (Id. at 23, 321);

- Ability to elevate toes and heals; normal strength and sensation in all motor groups in August 2012, (Id. at 23, 326);

- A significant gap in medical management by neurological service from September 2012 to May 2013, (Id. at 23, 24)

- Bone screws appeared to be well-positioned without evidence of persistent or recurrent stenosis, (Id. at 23, 343);

- Ability to elevate toes and heals in May 2013, (Id. at 23, 338); and

- Ability to step up easily on stepstool with either leg in May 2013, (Id.).

To be clear, the ALJ also noted evidence that supported Plaintiff's claims regarding her impairments and their severity, including questionnaire's completed by providers that stated their opinions regarding Plaintiff's work restrictions, specifically, that she is unable to engage in gainful employment (these opinions are discussed in greater detail below). (Id. at 22–26); see also (Doc. No. 9 at 7–10). Nevertheless, the breadth of objective medical evidence discussed in

the ALJ's decision clearly provided substantial evidence for his finding that Plaintiff's allegations of pain and limiting symptoms were not completely credible.

The ALJ also addressed the credibility of Plaintiff's testimony that she had depression due to pain and her pain makes it hard for her to focus. (Id. at 25). The ALJ cited to a provider's observation, upon clinical examination, that Plaintiff was:

> [O]riented, without agitation or anhedonia. Her mood and affect were appropriate and behavior was appropriate for age. She had no compulsive behavior and she had sufficient fund of knowledge and language. She was not forgetful, reported no hallucinations and exhibited no grandiosity. She had an appropriate affect, was not hopeless and exhibited no increased activity. There was no memory loss, no mood swings, no obsessive thoughts and she was not paranoid. She had normal insight, normal judgment, normal attention span and concentration.

(Id. at 25). In short, the ALJ had ample and substantial evidence for his conclusion that Plaintiff's testimony and other statements regarding pain and discomfort were not "completely credible." (Id. at 26). Indeed, the ALJ did not find that Plaintiff's subjective complaints were entirely lacking in credibility—only that some of her statements were not "completely credible." Thus, the ALJ's evaluation of Plaintiff's credibility was well-reasoned and supported by substantial evidence. The ALJ did not err in its assessment of Plaintiff's credibility.

  B. <u>Whether the ALJ Properly Performed a Function-by-Function Evaluation When Assessing Plaintiff's RFC</u>

Plaintiff contends that the ALJ did not perform a function-by-function analysis related to Plaintiff's ability to walk, stand, sit, lift, and bend. (Doc. No. 9 at 11). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96–8P, 1996 WL 374184, at *1. The Fourth Circuit, in <u>Mascio</u>, expounded on this requirement by suggesting that remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions,

despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." 780 F.3d at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)(per curiuam)). Importantly though, the Fourth Circuit declined to adopt a per se rule requiring remand whenever an ALJ does not perform an explicit function-by-function analysis because "remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id. at 636 (quoting Cichocki, 729 F.3d at 177).

The ALJ here failed to conduct a function-by-function analysis as required by Mascio.[3] There is contradictory evidence in the record regarding Plaintiff's ability to walk, sit, and stand and for what length of time. According to Social Security regulations, light work, which was Plaintiff's RFC in this case, requires "a good deal of walking or standing." 20 C.F.R. § 404.1567. Multiple sources including Plaintiff, both of her treating physicians, and some of her family members provided evidence that Plaintiff had issues walking, standing, and sitting for sustained periods of times. Most notably, Dr. Mark Moody, Plaintiff's primary care physician, concluded that Plaintiff could only walk 300 feet without rest, sit for 30 minutes continuously, and stand for 15 minutes continuously. (Tr. at 349). Furthermore, Dr. Moody stated that these limitations were based on objective medical complaints, not subjective ones. (Id. at 348). Dr. Ronald Johnson, Plaintiff's treating neurosurgeon, similarly stated that Plaintiff can only walk 100 feet without rest, sit for 30 minutes continuously, and stand for 10 minutes continuously. (Id. at 420).[4] Plaintiff explained she can't sit, stand, or be on her feet for long periods of time. (Id. at 148, 149). Plaintiff's husband stated that Plaintiff "can't sit or walk long periods of time."

---

[3] The Court notes that the ALJ in this matter did not have the benefit of the Mascio decision, which was not decided until after the ALJ rendered his decision.

[4] Dr. Johnson's limitations seem to be either based on subjective complaints or both subjective and objective medical complaints. (Tr. at 418).

(Id. at 184). Lastly, Plaintiff's parents stated that "she cannot stand very long at a time." (Id. at 195).

Although the ALJ expressly afforded little weight to each of these pieces of evidence, the ALJ can't wholly disregard the evidence, particularly when the same evidence comes from multiple sources, and in the case of Dr. Moody's opinion, at least apparently based on objective medical evidence. The ALJ's reliance on medical evidence and ADLs is sufficiently clear to explain a lesser credibility finding for Plaintiff and her physicians, but that evidence does not alone provide a clear logical connection for why the ALJ concluded that Plaintiff can perform the exertional functions of light work, including walking, sitting, and standing for sustained periods of time. In short, the ALJ may very well have relied on substantial evidence in reaching his conclusion, but it is not explained in a way that the Court can readily discern. Rather, the Court is left guessing how and why the ALJ determined that Plaintiff can satisfy the walking, sitting, and standing requirements of light work. See Mascio, 780 F.3d at 637; Franklin v. Colvin, 5:14-cv-00084-MOC-DLH, 2016 WL 1724359, at *6 (W.D.N.C. Apr. 29, 2016) (remanding where the record contained multiple references to difficulty walking "call[ing] into question the ALJ's finding that he could perform the full walking and standing requirements of light work"). Accordingly, remand on this issue is appropriate. On remand, the ALJ shall be required to address the evidence of record relating to the functions listed in the "light work" category and discuss his conclusion regarding Plaintiff's ability to perform those functions for a full work day. See Mascio, 780 F.3d at 636.

      C.     <u>Whether the ALJ Adequately Explained His Decision to Give Only Little Weight to the Opinions of Plaintiff's Treating Medical Providers</u>

Plaintiff finally argues that the ALJ failed to adequately explain his decision to assign

"little weight" to the medical opinions of Dr. Moody and Dr. Johnson, Plaintiff's treating physicians. (Doc. No. 9 at 12–14). The Fourth Circuit has held that the treating physician rule does not require that a treating physician's opinion automatically be afforded controlling weight. Hunter, 993 F.2d at 35. "[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (upholding ALJ's rejection of treating physician's opinion because the record contained contradictory evidence)).

Pursuant to Social Security Ruling 96–2p an ALJ must "give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion." S.S.R. 96–2p, 1996 WL 374188, at *5 (July 2, 1996). Specifically, the "notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. The Fourth Circuit has set forth the following factors to consider when determining the weight of a physician's medical opinion if not according it controlling weight:

      (1) whether the physician has examined the applicant,
      (2) the treatment relationship between the physician and the applicant,
      (3) the supportability of the physician's opinion,
      (4) the consistency of the opinion with the record, and
      (5) whether the physician is a specialist.

Johnson v. Barnhart, 434 F.3d 650, 655 (4th Cir. 2005); 20 C.F.R. § 404.1527(d)(2). Although an ALJ must consider all of these factors, the ALJ does not need to explicitly provide a factor-by-factor analysis or discuss every factor in the decision. Henley v. Astrue, No. 3:11-CV-488, 2012 WL 2804846, at *3–4 (W.D.N.C. July 10, 2012); Warren v. Astrue, No. 5:08-CV-149, 2009 WL 1392898, at *3 (E.D.N.C. May 18, 2009).

Here, the ALJ provided paragraph-long explanations for why he assigned little weight to Dr. Moody's and Dr. Johnson's opinions, despite relying on their medical treatment notes. For Dr. Moody, the ALJ specifically assigned little wait to Dr. Moody's opinion that Plaintiff had highly restrictive abilities and was "medically disabled and could not engage in gainful employment on a regular, reliable basis over eight hours per day, forty hours per week." (Tr. at 26). In support of the ALJ's determination, he explained that the opinions were "not fully supported by the evidence, the [Plaintiff's] activities of daily living or even her work activity as suggested in Urgent Care noted [sic] dated April 7, 2013 (Exhibit 11F/12)." (Id.). Dr. Johnson likewise opined that Plaintiff was medically disabled and the ALJ provided a similar response. (Id. at 27). Again noting the lack of support by the evidence, Plaintiff's daily activities, and her suggested work activity, the ALJ also cited Dr. Johnson's "fair to good" prognosis of Plaintiff (not indicative of totally disabled status) and Dr. Johnson's own medical summary, which grounded Dr. Johnson's functional assessment on headaches—an impairment the ALJ found not to be supported by the medical evidence. (Id.).

Dr. Moody's and Dr. Johnson's opinions are not specific functional limitations supported by objective evidence. Rather, they are summary statements that Plaintiff is disabled and unable to work, and therefore, they are not medical opinions afforded controlling weight or any special significance. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). See Pascoe v. Astrue, No. 1:11-cv-

226, 2012 WL 3528054, at *3 (W.D.N.C. July 23, 2012)(rec. dec. aff'd Aug. 14, 2012)(quoting SSR 96-5p, 1996 WL 374183).  As the ALJ noted, these conclusions are reserved to the Commissioner.  (Id. at 26 – 27); 20 C.F.R. §§ 404.1527(d), 416.927(d).  Accordingly, the Court overrules Plaintiff's assignment of error regarding the ALJ's assessment of the credibility of the Plaintiff's physicians' opinions.

## IV. CONCLUSION

After careful review of the ALJ's decision, the transcript of the proceedings, and the motions and briefs of the parties, the Court concludes that remand is appropriate.  Although the ALJs did not err in his assessment of the credibility of Plaintiff or her treating physicians', remand is required under the Fourth Circuit's recent Mascio decision so that the ALJ can complete a full function-by-function analysis and assess Plaintiff's ability to perform work-related functions for a full work day, including an explanation of how the evidence supports the analysis.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 8), is **GRANTED**;
2. Defendant's Motion for Summary Judgment, (Doc. No. 11), is **DENIED**;
3. The Court hereby **VACATES** the decision of the Commissioner and **REMANDS** this case for further administrative proceedings consistent with this Order; and
4. The Clerk of Court is directed to close this case.

Signed: March 30, 2017

Robert J. Conrad, Jr.
United States District Judge